Good morning, Your Honor. Mitchell Kline for the Plaintiff Appellant. Stephanie Shirley for the Defendant Appellee. Okay, Appellant, both sides are going to have 15 minutes to argue. Appellant, of course, you'll want to have rebuttal, so reserve from your 15 minutes however much time you wish to have for rebuttal, okay? Thank you. Okay, Appellant may proceed. Let me just make a note. Good morning, Justices. Mitchell Kline for the Plaintiff Appellant. This is a Plaintiff's Appeal of the Circuit Court Order Granting Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint. It's a one-count complaint, intentional infliction of emotional distress. The two issues presented for review, one is whether the Circuit Court erred in granting Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint based on the Court's opinion that Plaintiff's complaint was barred by the Illinois Workers' Compensation Act. Can I ask you a preliminary question? The Motion to Dismiss was based on 2615 and 2619, is that right? Yes. When the trial court made its ruling, did it say what section or what either 2619 or 2615 it was relying on when it made its ruling to dismiss? I'm not sure exactly, Your Honor. I know there was a specific reference to the case was barred by the Workers' Comp Act. And I would say it was a question of law and also specifically that it was barred by the Illinois Human Rights Act. So is the suggestion then that you're making is it was based on 2619 because it was affirmative matter that barred the relief? Yes, Your Honor. Not 2615? That's my understanding, Your Honor. All right. Thank you. Continue. First, referring to the first issue as far as why we believe it's not barred by the Illinois Workers' Compensation Act, I think a few key facts would be helpful. Plaintiff Mr. Schroeder began working for the defendant in 2008. He worked through 2010 in Chicago and Merrillville accounting inventory for clients, including retail stores. The defendant provides inventory services for businesses in Chicago and around the world. Plaintiff's normal work week included the following, leaving home on Mondays at 5.30 a.m. to arrive at work at 8 a.m. So we're talking about a commute each way of two and a half hours each way. His normal day was driving a van full of employees to inventory service jobs, often not finishing until 3 a.m. the next morning. And during his jobs he was supervising employees. Mr. Klein, let me ask you, as I understand it, he went in and he quit his job. But then after negotiation, he was told he could be reassigned to another district. And he consented to that. So the travel times that you're talking about, that should have been within his knowledge before he accepted this redistricting, shouldn't it? The answer would be yes, but I think the prior job that caused the problem, that was regarding comments that were slurs based on his alleged being gay. And when he talked about quitting at that point, that was prior to going to Merrillville. So what you're referring to were events where he talked about quitting and then he was persuaded to stay. That was prior to this long commute. But isn't it reasonable to expect that he was going to be transferred to Merrillville? Shouldn't he have realized what would have been involved? Oh, no, that's clear. He accepted it. Yes, he did accept it. That's clear. So he had to have some knowledge. If I was told my employer, if I was, let's say, a manager in Chicago, and they said, well, we want to send you out to L.A., I'd certainly know what would be involved, wouldn't I? Yes, that's clear. So he had some knowledge. And then for me to later complain, well, you know, I have to fly to Chicago four times a year to see my relatives and friends. It's kind of misplaced, isn't it? Well, I think I would disagree slightly, Your Honor. I would say that he had some knowledge. He knew, obviously, he lives in Chicago on the west side of Oak Park. He knew as far as I would say that so he had some knowledge. He knew where Merrillville was, so he had an idea about it. But I would say certainly after you do it every day, and he wasn't aware that he was going to be working until 3 a.m., part of it, so it was more than just the two and a half hours each way, which I think is substantial. And I think having some knowledge of it and actually doing it every day, there's certainly a difference. But I think there's also other key facts that he wasn't expecting to work until 3 a.m. as we state in the complaint. It was not unusual for him to work 20 hours a day, and often he slept on the office floor four days a week. So it was besides the two and a half hour commute each way, which I think is significant, there are other other. It certainly is significant. There's no question in my mind that that's significant. But was anyone forcing him to do it? As I understand it, he quit the job, so alternatively they tell him, we'll move you and it's going to be Merrillville. It seems to me that there's an acceptance of those conditions. He knew it was involved. Well, I would say acceptance of one key condition of the commute, but I would say the other conditions of 20 hours a day, the need for him to sleep on the floor because of that, you know, sleep on the office floor four days a week. I would say he certainly wasn't, there's no indication that he was expecting that before he took the job. Is the job the same, same job that he had here? No, it was a promotion, and that's I think is also significant. But it was a promotion to a management position. The job in Merrillville was a promotion. Did that entail a higher salary as well? I believe so. But I think what's as far as significant, if I can just focus on the workers' comp issue first, if there's no other question at this time, the issue is whether the case should be barred by the Workers' Comp Act. And we believe it definitely should not. The focus in Workers' Comp, for an injury to be compensable, it either has to be what's, the term that they use is either physical mental, a physical injury causes a mental problem, or a mental mental, that a mental issue causes a permanent mental issue. And as the brief of defendant, they choose to focus on the fact that the belief there was a physical mental, and they're referring to the exhaustion. And we state in our complaint that on Monday, February 22, 2010, plaintiff felt extremely exhausted, and it was clear to him that his safety and the safety of his co-workers were of no concern to his supervisors. Plaintiff then sent a letter of resignation to defendant. So certainly the exhaustion is not in dispute. But what we dispute is that it causes a physical mental kind of condition. And the two cases that defendant relies on, I think, are very different and very distinguishable. The one case they rely on is Matlock, which was a flight attendant. And the flight attendant, while she was on, during a flight, she was physically attacked. That's certainly very different than our facts, where gradually over time, and it took over a year before he decides that he can no longer deal with this exhaustion. And the second case they cite, the city of Springfield, that was a sexual assault case, where the woman was nonconsensual sex intercourse over a five-month period. So we think that our facts are very different. Gradual exhaustion is very different than the physical attacks that both of these cases refer to. Counsel, can I ask you, what about the Runyon case that talks about non-traumatically induced mental injury? Well, as far as if it's non-traumatically induced, I think we would be talking about it would not be a physical mental. It would either be a mental mental. And I think the distinction with our facts, Your Honor, would be that we're not alleging any permanent disability. We are saying a severe emotional distress, but nowhere in our complaint are we saying that the exhaustion was permanent. So I think that's – and all the workers' comp cases that refer to psychological injury, starting from the Pathfinder case, which is one of the critical cases in the line of psychological injuries, they all talk about a permanent injury. And we're never alleging that the exhaustion was permanent. And I think a key fact in Pathfinder is that the plaintiff in that case had – one of the facts was that 11 months after the work experience was over, 11 months later she's still seeking psychological treatment. We're not alleging that he had any – he needed any psychological treatment or psychiatric treatment. After he left, the exhaustion ended as soon as the employment ended. So we think there has been no case cited by the defense that is any way similar to our facts regarding workers' comp because our facts are clearly different from the physical mental or the psychological or mental mental because one, we don't have any sudden assault or an injury, and two, we do not have permanent psychological injury. The circuit court didn't base its dismissal on the workman's comp act. If I recall, there was some where Justice – Judge Taylor said something to the effect he was uncertain about the comp act, but he went forward and dismissed your complaint on the intentional infliction of emotional distress. He said you didn't have an adequate tort claim, correct? There were two issues, I believe, Your Honor. Why don't you address that? Well, the second issue about the Illinois Human Rights Act, I think the key – one of the key cases that's critical and similar is the Maximovit – the Illinois Supreme Court case of Maximovit, and I think our facts are very – there are some similarities regarding that. As far as the key thing that we have to show is that there is the – in our case, there are elements and there are facts in the complaint that make no reference at all to retaliation. So we – as far as that – so our intentional infliction of emotional distress, we can show is very independent than the retaliation issue that was the initial cause of action. And I think what's important as far as the language in Maximovit, it states, when the circuit court may exercise jurisdiction over a tort claim, depends upon whether the tort claim is inextricably linked to a civil rights violation such that there is no independent basis for the action. We believe our facts, as far as the intentional infliction, there are basically three elements. The first one is that the defendant's conduct was extreme and outrageous. We believe there are several facts that show that, including comments – the key is this manager, McNeil, who's making – who's at management meetings and conference calls. First he says, if the drive doesn't get rid of him, the jungle from Gary will. It's clear that – and then every monthly meeting he's constantly repeating that any manager caught helping the plaintiff – and here we have a new manager and he's doing the opposite of what any management team, any good management organization would want. Instead of encouraging a new manager, he's specifically ordering his other managers, if you're caught helping the plaintiff, it's cause for discipline. Counsel, can I agree with you that those are not good things that happen, that people did do them, but does it meet the definition of outrageous that's demanded by the case law? Is it outrageous? I think it does, Your Honor. And I think a key case is Colgus because it's a little different. I think some of the comments made – and obviously it could be a question of fact. Three people could honestly differ on what's outrageous. But as far as the Colgus facts, I think the key is it's an abuse of a management position. And I think that's what's clear, that they – and they refer to the Colgus court, the Supreme Court. The Colgus case stated that the nature of the defendant's conduct must be so extreme as to go beyond all reasonable bounds of decency and to be regarded as intolerable in a civilized community. Now, I'm well aware from the record in the briefs some of the shameful names that this gentleman was confronted with. But aside from that, what management did in this case, was it so beyond the bounds of decency that we should – And I would say yes, Your Honor, because it's – the language in Colgus, they refer to the abuse of some position which gives them actual or apparent authority over the plaintiff or the power to affect his interests. The extreme and outrageous character of defendant's conduct may arise, not so much from what he says or does, but from the improper use of a position of power, which gives them the ability to adversely affect the plaintiff's interests. So I think we – the facts certainly support that. And in addition, Your Honor, the Colgus case was about comments made on a radio station, WLUP. And it's a reference to the syndrome, the elephant – referring to the syndrome regarding an elephant-sized head. So there were improper comments made on the radio to a man and his family. And it's basically one occurrence. So I would say if you compare the facts to the Colgus facts, our facts are much stronger. We not only have – besides, as Your Honor referred to, some of the specific language this guy uses about, you know, his queer buttocks, you know, as far as that, you know, clear intent trying to get rid of him. But it's not just one event, Your Honor. It's going on for a year. Every month he's telling his management the same thing. So we believe our facts are much stronger. And it's certainly abuse. So we – to save some time for rebuttal, I just want to point out, I think the law and facts are very clear that the motion should be denied. Counsel, let me ask you one more question. Isn't it clear that the courts are hesitant to claim as outrageous an employer's actions? I mean, looking at the case of Welsh v. ComEd, it says if anxiety and stress resulting from job transfers or terminations could form a basis for every intentional infliction of emotional distress claim, every employee will have a cause of action. I mean, so this – the Colgus case was not an employee-employer case. Correct. Right. That's true. But I think the language that they refer to and I – the language that you just referred to, Your Honor, that's clear, but I think there's a difference between typical, you know, comments in a workplace that are maybe inappropriate or unprofessional versus you have – we have intentional – this manager is saying if you help this guy, you're going to be disciplined. And he's repeating that every month to his managers. So he's doing everything he can for this guy to fail, and I think that distinguishes our facts from what you cited. One more. Are you familiar with the term claim splitting? Generally. I mean, you have two – obviously, we have – there are two. Yeah, so you are familiar with it. But do you think it applies in this case? No. I think – I mean, we only have one count in our complaint, the intentional infliction of emotional distress, and we think that it's not barred by the Workers' Comp Act and it's not barred by the Human Rights Act. Thank you. You'll have five minutes on your bill. FLE? Your name again? Stephanie Shirley. May it please the Court? This case is very simple. Under the facts alleged, plaintiff cannot and has not stated a legally cognizable claim for intentional infliction of emotional distress for three independent reasons. First, under the Illinois Workers' Compensation Act, his claim is preempted and barred by the exclusivity provision. Second, the claim is also preempted and barred by the Illinois Human Rights Act. And third, the plaintiff cannot state a claim for intentional infliction of emotional distress because he cannot allege extreme and outrageous conduct as a matter of law. Counsel, let's go back to the beginning here. Relative to the 2619 versus 2615 motions, did the Court actually make a ruling on whether or not the second amended complaint stated a cause of action for IAED or not? He did not. And I think the confusion comes from the first amended complaint and the second amended complaint. Under the first amended complaint, he dismissed the complaint for the reasons that it was barred by the Illinois Human Rights Act and it could not state a claim. At that stage, he was unconvinced of whether or not the Workers' Compensation Act. Right, but just look at the second one. What were the reasons? Under the second one, he dismissed the complaint because it was barred by the Illinois Workers' Compensation Act and because portions of it were also barred by the Illinois Human Rights Act. Where did he get the portions part of it? Where in the ruling did the Court say portions of it are barred? I don't think the Court went into that, does it? He just dismissed the complaint, correct? That's correct. Yeah, so, okay. That's correct. All right, continue. And here, as we just said, the Circuit Court correctly dismissed it for two reasons, based on the preemption under the Workers' Compensation Act and preemption by the Illinois Human Rights Act. Now shorter, the plaintiff argues that the trial court erred because it's not preempted by the Workers' Compensation Act because its injury is not compensable under the Act. And second, that he can state a claim that it's not preempted by the Illinois Human Rights Act, I'm sorry, because he can properly allege a cause of action without relying on the duties created by the Act. Counsel, what about the argument your opponent makes relative to the permanency issue under the Workers' Comp Act? The fact that that raises quite a few issues. First of all, if it's not permanent, then he cannot allege, he has not alleged extreme, that he suffered extreme, I'm sorry, emotional distress. In order to properly state a claim for potential affliction of emotional distress, the first element is that he suffered extreme and outrageous emotional distress. If he's saying that his injury is not permanent, and here whether or not the injury is the temporary exhaustion or the temporary exhaustion caused him to suffer emotional distress, if he's claiming that it's the temporary exhaustion and that it was alleved once he left the employment, then he's not satisfied the first element of that cause of action because he has not suffered emotional distress. If he had suffered a nervous breakdown, would that have been sufficient under the Act? It would depend on the specific facts that were alleged. What he's alleged here is that over a one-year period, he suffered gradual exhaustion. And that gradual exhaustion is unclear from the record, whether it's the gradual exhaustion that caused him severe emotional distress or if he's complaining that the gradual exhaustion in and of itself is the emotional distress. Now, if it's the latter, then he can't satisfy the first element and he cannot allege a claim as a matter of law. But he never filed anything for Workers' Comp anyway. That's correct. That is correct. And also addressing the permanency issue, the Illinois Supreme Court has stated that emotional distress is compensable under the Act. In the Runyon case, in addition to talking about whether or not there was a permanency issue, they also addressed that on-the-job stress in and of itself is not a disease. And then this leads us into a third argument, that plaintiff here has alleged nothing more than on-the-job stress, which has caused him this alleged either temporary exhaustion or emotional distress. Now, that being the case, that's not extreme and outrageous conduct as a matter of law. Getting back to the Workers' Compensation preemption argument, the exclusivity provision provides the employer with an affirmative defense that any injuries arising from or out of employment are compensated by the Illinois Workers' Compensation Act. There's only four exceptions to that, and one of them is whether the injury is not compensable under the Act. Now, here plaintiff ignores three major guiding legal principles. The first, that the Illinois Supreme Court has said that emotional distress is compensable under the Act. The second is that the circuit court correctly determined that plaintiff here suffered a physical mental trauma, that he worked so hard that he got this exhaustion, which caused him the emotional distress. And that is the crux of his claim, based on the allegation from his complaint. And then third, as Justice Connery brought up, the non-traumatically induced mental injury, his injury here must qualify as that, because if it doesn't, then his claim, he necessarily can't state a claim for extreme and outrageous conduct as a matter of law, because non-traumatically induced mental injury occurs when three circumstances are met. First, that the mental disorder arose in a situation of greater dimensions than the day-to-day emotional strain and tension which all employees must experience. Second, that the conditions exist in reality from an objective standpoint. And third, the employment conditions, as compared with the non-employment conditions, were the impetus for causing the mental disorder. Going in reverse order with the last first, that's exactly what the plaintiff alleges here, is that these employment conditions are what caused him to have this emotional distress. Second, that the conditions exist in reality. We must accept his, for the purposes of the motion to dismiss, that his allegations are true. And then third, that the situation came out of a greater dimension than that of day-to-day emotional strain. Well, a claim for intentional affliction of emotional distress necessarily contemplates that that is the case. If it weren't, then he can't allege extreme and outrageous conduct as a matter of law. This is where he's found himself in a legal conundrum, because either the claim is preempted and barred by the Illinois Workers' Compensation Act because it's a non-traumatically induced mental injury, or he cannot allege extreme and outrageous conduct as a matter of law. Based on that, the court correctly determined that his claim was preempted and barred by the Illinois Workers' Compensation Act. The court also correctly found that the claim was preempted and barred by the Illinois Human Rights Act, because what plaintiff is trying to do here is he's trying to rely on the legal duties created by the Illinois Human Rights Act in order to state a claim for intentional affliction of emotional distress. What he alleges here is that he was called some names, which we do not condone, we understand the severity of them, and after he complained about those names, after he complained, he was brought back, and then he was retaliated against in various ways by being put on horrible working assignments, having to work long hours, no one was giving him help, those types of things. So what he's essentially alleging, and what's throughout his complaint, is that he suffered sexual orientation harassment, and then after that, he was retaliated against.  So he can file his time-barred retaliation and sexual orientation harassment allegations and use them as an intentional affliction of emotional distress claim, which he cannot do. This case, the allegations here, are very similar to those in Guys v. Phoenix, which the court found was a negligent supervision and a negligent hiring case, where the court found that those claims were also preempted by the Illinois Human Rights Act, because in that case, the plaintiff was trying to do the same thing the plaintiff is trying to do here, and use the legal duties created by the act in order to state a claim. Finally, plaintiff has not and cannot state a claim for intentional affliction of emotional distress as a matter of law, because he cannot state the extreme and outrageous conduct. And you've got to admit, counsel, there was some bad conduct, right? Your Honor, there is some bad conduct, but still the conduct does not rise to the level of extreme and outrageous conduct to go beyond all bounds of human decency. This case is very similar to the Miller v. Equitable Life Assurance case, where in that case, the employee, for three and a half years, claims that she was subjected to rude, unprofessional, she was called a white racist, very similar behavior to what the plaintiff here is alleging, and there the court said, cannot find a claim for extreme and outrageous conduct as a matter of law. The dismissal of the intentional affliction of emotional distress claim was affirmed, and they made similar statements, as Justice Connors, as you were pointing out, that if every employee could state a claim for on-the-job stress, the floodgates would open and we would have employees in here in the circuit court every day stating a claim for emotional distress. It's clear that here the court has properly ruled that the complaint should be dismissed of prejudice. If there's no further questions.  Thank you. I just want to address a few comments that counsel raised. One about the issue of severe emotional distress and permanency.   They're two different, it's like the old apples and oranges. Certainly we all can experience emotional distress and severe emotional distress, and it doesn't necessarily mean permanency. It could last for a day or two, and I think the general connotation, as far as in the medical community, is that for something permanent it must last one year. And the Pathfinder case, there was clear evidence that the plaintiff in that case was seeking medical treatment 11 months after the termination was over. Those facts are very different than what we have. We certainly have alleged that he experienced severe emotional distress while he was working there, the exhaustion, the two-and-a-half-hour commute each way, the 20-hour workdays, the needing to spend every four days a week to sleep in the office, that all caused exhaustion and emotional distress. He said, after a year, he says, I can't take this anymore. The stress was so bad. Gradually, once he's no longer in the workforce, there's no allegation that the stress continued. We never alleged that it was permanent. We certainly say that he experienced severe emotional distress, but there was no indication that it continued after he worked there, no medical indication that it was permanent. So we think there's a clear distinction between severe emotional distress can exist independently when it's not permanent. Just one other point, as far as the Maximova case, where they did find that the tort action was independent from the Human Rights Act case, and that was a sexual harassment situation where there was also a basis for it. There was touching. There was a basis for an independent battery. We would say, in that case, the separation was not as clear as our separation. In our facts, we make very little reference to anything that could be considered retaliatory. We have a very clear independent cause of action of the elements of intentional infliction of emotional distress that has nothing to do with retaliation. And in the Maximova case, their complaint makes a lot of reference to the sexual harassment, which was under the Illinois Human Rights Act. And so we believe our facts are stronger than Maximova, where in that case the Supreme Court did find that you can have an independent cause of action, even though there might be some connection or some relation to the initial action with the Illinois Human Rights Act. So let me ask you, relative to the Illinois case, the Geise case, doesn't it say the fundamental nature of the claim? What is the fundamental nature of this claim? Isn't it based on his being harassed because of his sexual preference? Isn't that the basis for it? No, I would say no, and because as far as the end, you've got the conduct of McNeil. I mean, when he's on a monthly basis, he's saying, if you help him, you're going to be disciplined. I mean, he has made some references to his queer ass. I mean, that's a quote. However, on a monthly basis, he doesn't keep bringing that up. So as far as the connection, I would say it's soft. It's not like the focus is his being gay. The focus is, you know, we want to get rid of him. We're going to make it as difficult as possible. Every month he's telling his managers, don't help him. So on a monthly basis, the repetition, there is no reference on a monthly basis to anything that has to do with him being gay. We respectfully assert that when viewed in the light most favorable to the plaintiff at this stage to dismiss the complaint, the facts in the complaint are sufficient to state a cause of action upon which relief can be granted. Thank you. Thank you. Okay. Thank you to the litigants for their briefs and the fine oral argument. This panel is additionally composed with the membership of Justice Simon, who could not be here this morning. He will participate in the opinion and order that we enter. I'm sure he'll be listening to the audio tapes of the arguments. Thank you very much. This case is taken under advisement.